1
2
3
4
5                        **UNITED STATES DIST   RICT COURT**
6                            EASTERN DISTRICT OF CALIFORNIA
7
8    DEVIN OTTE,                                CV F   06-00943 OWW SMS HC

                              Petitioner,       FINDINGS AND RECOMMENDATION
9                                               REGARDING PETITION FOR WRIT OF
              v.                                HABEAS CORPUS
10
                                                [Doc. 1]
11   KATHY MENDOZA-POWERS,

12                            Respondent.
     _____/
13

14         Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

15   pursuant to 28 U.S.C. § 2254.

16                                        BACKGROUND

17         Petitioner is currently in the custody of the California Department of Corrections and

18   Rehabilitation pursuant to a judgment of the Los Angeles County Superior Court.  On June 14,

19   1991, Petitioner was convicted of first degree murder with the special circumstances of lying in

20   wait and murder in the commission of a robbery.  Petitioner was sentenced to an indeterminate

21   25-year-to- life sentence.  (Exhibit A, Abstract of Judgment.)

22         In the instant petition, Petitioner does not challenge the validity of his conviction, rather,

23   he challenges the decision of the California Board of Prison Hearings ("BPH") finding him

24   unsuitable for parole following his initial parole consideration hearing on April 22, 2004.

25   (Exhibit B, Hearing Transcript.)  Petitioner contends that the decision denying parole violated the

26   Fourteenth Amendment because it was not based upon "some evidence."

27         On June 29, 2005, Petitioner filed a petition for writ of habeas corpus in the Los Angeles

28   County Superior Court, which was denied in a reasoned opinion on August 19, 2005.  (Exhibit D,

                                                 1

1  attached to Answer.)

2       On November 21, 2005, Petitioner filed a petition for writ of habeas corpus in the

3  California Court of Appeal, Second Appellate District.  The petition was denied on November

4  22, 2005.  (Exhibit D, at 1.)

5       On December 1, 2005, Petitioner filed a petition for review in the California Supreme

6  Court.  The petition was summarily denied on February 22, 2006.  (Exhibit E.)

7       The instant petition for writ of habeas corpus was filed on May 23, 2006, in the United

8  States District Court for the Central District of California.  (Court Doc. 1.)  The petition was

9  transferred to this Court by order of July 7, 2006, and filed in this Court on July 21, 2006.  (Court

10  Doc. 1.)

11       Respondent filed an answer to the petition on December 5, 2006, and Petitioner filed a

12  traverse on January 31, 2007.

13                    STATEMENT OF FACTS[1]

14       On the afternoon of May 17, 1988, Petitioner had a telephone conversation with victim,

15  John Johnson, regarding the purchase of narcotics.  At approximately 5:30 that afternoon, the

16  victim left his house with a brown bag containing $17,000 in cash.  He was picked up by

17  Petitioner. Petitioner drove the victim to a remote location in Granada Hills near Sesnon and

18  Louise Streets.  Defendant Morton was observed hiding in the bushes at the location while

19  Defendant Johnson was waiting in a red vehicle.  Three gunshots were heard and three

20  individuals were observed in the roadway.  Defendant Morton was pulling a rifle when Petitioner

21  yelled, "You shot me in the foot." Two of the defendants got into a blue Mustang while a third

22  got into the red car with the weapon.  Both cars sped away.  The victim was found in the bushes

23  with two bullet holes in his chest.  Bullet cases found at the scene matched a nine millimeter

24  ammunition used in the Uzi riffle.  The coroner's examination revealed death to be a result of

25  multiple gunshot wounds.  The coroner recovered nine millimeter slugs from the victim's body.

26  The slugs were a positive match to the Uzi rifle recovered in the defendants' vehicle.  The two

27  ─────────────────

28       [1] This information is derived from the Probation Officer's Report, attached as Exhibit C to Respondent's Answer.

1  automobiles used by the defendants were searched at Holy Cross Hospital the same date.  A

2  digital police scanner, Uzi rifle, two casing, a box of nine millimeter ammunition, $17,000 in

3  cash, gloves, and Uzi paperwork and targets were recovered.  A representative from National

4  Gun Sales stated that Defendants Morton and Johnson purchased the Uzi rifle in question.  In

5  addition, all three defendants went to a firing range to shoot the rifle.  All three defendants went

6  to Holy Cross Hospital immediately after the shooting. Petitioner had a gunshot wound in his

7  foot.  Defendant Morton told officers that he and his brother Petitioner were shot at and his

8  brother was hit.  A nine millimeter bullet was recovered from Petitioner's foot.  Defendant

9  Morton was interviewed by officers after a Miranda waiver.  He admitted to buying a rifle, to

10  conspiring to rob and murder the victim and to being the shooter.  Petitioner was also

11  interviewed and provided a Miranda waiver.  He admitted to picking up the victim in Scott

12  Johnson's vehicle and taking the victim to the crime scene for an ambush.  He said that all three

13  planned the robbery/murder approximately two weeks prior.  Defendant Scott Johnson was

14  interviewed and gave a Miranda waiver.  He did not admit to being involved in the robbery- -

15  murder.  He did admit to lending [Petitioner] his vehicle and firing the Uzi at the firing range.

16  All defendants were taken into custody without incident.

17  (Exhibit C, at 2-4.)

18  ## DISCUSSION

19  I.  ___Standard of Review___

20  On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

21  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

22  enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries

23  v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th

24  Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy,

25  521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).

26  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its

27  provisions.

28  Petitioner is in custody of the California Department of Corrections pursuant to a state

court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams, 529 U.S. at 413; see also Lockyer, 538 U.S.

1  at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the
2  state court identifies the correct governing legal principle from [the] Court's decisions but
3  unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at
4  413.

5  "[A] federal court may not issue the writ simply because the court concludes in its
6  independent judgment that the relevant state court decision applied clearly established federal
7  law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.
8  A federal habeas court making the "unreasonable application" inquiry should ask whether the
9  state court's application of clearly established federal law was "objectively unreasonable." Id. at
10  409.

11  Petitioner has the burden of establishing that the decision of the state court is contrary to
12  or involved an unreasonable application of United States Supreme Court precedent. Baylor v.
13  Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the
14  states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a
15  state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th
16  Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

17  AEDPA requires that we give considerable deference to state court decisions. The state
18  court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's
19  interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), cert. denied,
20  537 U.S. 859 (2002), rehearing denied, 537 U.S. 1149 (2003).

21  II.   Review of Petition

22  A parole release determination is not subject to all the due process protections of an
23  adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see
24  also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural
25  protections that particular situations demand). "[S]ince the setting of a minimum term is not part
26  of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not
27  constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at
28  1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole

board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, <u>Pedro</u>, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," <u>Greenholtz</u>, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," <u>Id</u>.; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability. <u>Superintendent, Mass. Correc. Inst. v. Hill</u>, 472 U.S. 445, 455 (1985); <u>Cato v. Rushen,</u> 824 F.2d 703, 705 (9th Cir.1987).

"In <u>Superintendent v. Hill</u>, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558 (1974)." <u>Sass</u>, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. <u>Id</u>. Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. <u>Id</u>., *citing* <u>Superintendent v. Hill</u>, at 455-56. Although <u>Hill</u> involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." <u>Id</u>., *citing* <u>Jancsek v. Oregon Bd. of Parole</u>, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the BPH is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of

1    unsuitability.

2    15 Cal. Code Regs. §§ 2402(a) and (b).

3       Further, when an inmate is considered for the first time at the initial parole consideration

4    hearing, "[a] parole date shall be denied if the prisoner is found unsuitable for parole under

5    Section 2402(c).  A parole date shall be set if the prisoner is found suitable for parole under

6    Section 2402(d). 15 Cal. Code Regs. § 2401.

7       In this case, with regard to the procedural protections outlined in Greenholtz, Petitioner

8    was provided all that is required.  Petitioner was given advance notice of the hearing, he was

9    offered representation by counsel at the hearing, he was granted an opportunity to submit

10    materials for the Board's consideration and an opportunity to be heard during the hearing, and he

11    was provided a written decision explaining the reasons why parole was denied.  See Answer,

12    Exhibit B.

13       Petitioner, however, contends the BPH's decision had no evidentiary support.  In denying

14    Petitioner's state petition for writ of habeas corpus, the Los Angeles County Superior Court

15    found that there was some evidence to support the BPH's finding that Petitioner's commitment

16    offense was carried out in a "very calculated" manner and he is unsuitable because of his prior

17    record of violence.  (Exhibit D, Opinion, at 2.)  The Superior Court found, however, that there

18    was not "some evidence" to support the BPH's finding that the motive was "very trivial," that his

19    programming was deficient, or that the psychological evaluation was not supportive of his

20    release. (Id. at 2-3.)  After reviewing all relevant evidence, this Court finds that the state court

21    decisions rejecting Petitioner's claims were not unreasonable, because the BPH's decision is

22    supported by "some evidence."

23       At Petitioner's initial 2004 parole hearing, the BPH found that the first degree murder

24    was carried out  in a dispassionate and calculated manner, pursuant to § 2402(c)(1)(B).[2]  In order

25    _____

26       [2]   Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances
tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous,

27    atrocious or cruel manner.  The factors to be considered include:
        (A) Multiple victims were attacked, injured or killed in the same or separate incidents.

28        (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-
        style murder.

1   to find that an offense was committed "in an especially heinous, atrocious or cruel manner" there

2   must be some evidence that the "violence and viciousness of the inmate's crime" is greater than

3   that which is "minimally necessary to convict [the defendant] of the offense for which he is

4   confined.  (15 Cal. Code Regs. § 2402(c)(1); In re Dannenberg, 34 Cal.4th 1061, 1095 (2005).

5   Here, as previously stated, Petitioner was convicted of first degree murder.  First degree murder

6   is defined as "murder which is perpetrated by any kind of willful, deliberate and premeditated

7   killing with express malice aforethought. [¶] The word 'willful,' as used in this instruction,

8   means intentional. [¶] The word 'deliberate' means formed or arrived at or determined upon as a

9   result of careful thought and weighing of considerations for and against the proposed course of

10   action.  The word 'premeditated' means considered beforehand."  (CALJIC 8.20.)  Malice by

11   itself involves "'an element of viciousness-an extreme indifference to the value of human life.'"

12   (People v. Summers, 147 Cal.App.3d 180, 184 (1983).

13        Based on a review of the record, the BPH's decision is clearly supported by "some

14   evidence."  Petitioner and his two crime partners planned the ambush and murder of the victim

15   two weeks prior to its occurrence.  The substantial planning involved prior to killing the victim

16   was clearly the result of careful thought demonstrating the presence of weighing the

17   considerations for and against the proposed course of action.  Petitioner callously lured the victim

18   to the crime scene involving a false drug transaction, where his two codefendants were lying in

19   wait and shot an Uzi rifle killing the victim. His codefendants purchased the Uzi riffle for the

20   specific purpose of killing the victim, and all three defendants practiced firing the gun at a

21   shooting range.  The victim was left with several gunshots wounds in the bushes. At his parole

22   hearing, Petitioner freely acknowledged that he took the life of the victim "in a cruel and

23   atrocious manner.  I took him, for me I deserve death." (Exhibit B, at 27.)  The murder was

24   carried out exactly as planned, and the cold blooded execution-style murder of the victim

_____

(C) The victim was abused, defiled or mutilated during or after the offense.
(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

1    definitely exceeds the minimum elements necessary for a conviction of first degree murder.  In re

2    Rosenkrantz, 29 Cal.4th 616, 667 (2002). Based on these circumstances, the BPH's finding that

3    the first degree murder was carried out  in a dispassionate and calculated manner is clearly

4    supported by "some evidence."

5         The Court acknowledges that the Ninth Circuit has stated "continued reliance in the

6    future on an unchanging factor, the circumstance of the offense and conduct prior to

7    imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could

8    result in a due process violation." Biggs v. Terhune. 334 F.3d 910, 916-917 (9th Cir. 2003).  In

9    Sass v. California Board of Prison Terms, 461 F.3d 1123 (9th Cir. 2006), the Ninth Circuit held

10   that it was not a per se due process violation if the Board determines parole suitability based

11   solely on the unchanging factors of the commitment offense and prior offenses.  Sass, at 1129

12   (prisoner's commitment offenses in combination with prior offenses amounted to some evidence

13   to support the Board's denial of parole).  However, the Court did not take issue with the

14   comment in Biggs that over time a commitment offense may be less probative value in relation to

15   the prisoner's current threat to public safety.

16        In Irons v. Carey, 505 F.3d 846, as amended, (July 13, 2007), the Ninth Circuit again

17   upheld the denial of parole based on the prisoner's commitment offense and prior criminal

18   history, but acknowledged the continuing validity of the holding in Biggs, and finding that relief

19   for Irons was foreclosed by Sass.  The Court pointed out that in the cases where it previously

20   found that the denial of parole based solely on the commitment offense withstood a due process

21   challenge, the prisoners had not yet served the minimum number of years for which they were

22   sentenced.[3]  Irons, at 853-854.  In the instant case, at the time of the 2004 parole hearing,

23

24   ───────────────

     [3] Most recently in Hayward v. Marshall, __ F.3d __, 2008 WL 43716 (9th Cir. January 3, 2008), the Ninth

25   Circuit, in reversing the denial of parole, again affirmed its prior comments in Biggs, Sass, and Iron, that "'in some
     cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his

26   rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant
     California statutes.'" Hayward, 2008 WL at *7 (citing Irons, 2007 WL 2027359, at *6.)  In addition, the Ninth

27   Circuit clarified that for purposes of collateral review "'[t]he test is not whether some evidence supports the reasons
     the Governor cites for denying parole, but whether some evidence indicates a parolee's release unreasonably

28   endangers public safety.  Some evidence of the existence of a particular factor does not necessarily equate to some
     evidence the parolee's release unreasonably endangers public safety."  Hayward, at *5 (cases citations therein.)

1    Petitioner had only been incarcerated 13 years of his 25 year to life sentence, and the concerns

2    expressed in <u>Biggs</u> and its progeny are not present here.

3        Turning to Petitioner's prior criminal history, there is clearly "some evidence" to support

4    the BPH's finding that such history demonstrates a present risk to public safety.  15 Cal. Code

5    Regs. § 2402(c)(2).[4]  Petitioner's lengthy criminal career, which includes two violent offenses,

6    began at the age of 13 when he committed a burglary on December 13, 1982.  On September 20,

7    1986, Petitioner was found to be in possession of a controlled substance.  On February 12, 1987,

8    Petitioner committed an assault with a deadly weapon.  On July 7, 1987, Petitioner was found to

9    be in possession of alcohol.  On July 23, 1987, Petitioner committed a battery upon a person.

10   Lastly, at the age of 18, Petitioner committed the instant first degree murder on May 17, 1988.

11   (Exhibit B, at 29-30; Exhibit C, Probation Officer's Report, at 6.)  Petitioner did not benefit from

12   the prior sentences of probation and juvenile detention.

13       The BPH commended Petitioner for continuing to upgrade educationally, substantial

14   participation in self-help programming, and exceptional work experience.  (Exhibit B, at 59-60.)

15   However, on balance the BPH found that these positive factors did not outweigh factors of

16   unsuitability.  (<u>Id</u>. at 60.)

17       Although Petitioner has undoubtedly exhibited an exemplary prison record including, no

18   rules violation reports, substantial programming, and solid parole plans, at this time and on this

19   record, it simply cannot be said that the state courts' determination that "some evidence"

20   supports the BPH's finding of unsuitability based on Petitioner's commitment offense and prior

21   criminal history is contrary to, or an unreasonable application of, Supreme Court precedent.  That

22   said, should Petitioner continue his incarceration with the current prison record, there will be a

23   point in time where the BPH's sole reliance on Petitioner's commitment offense and prior

24   criminal history rises to the level of a due process violation; however, at the present time

25   Petitioner has not yet reached that point.

26   _____

27       [4]  15 Cal. Code Regs. § 2402(c)(2) sets forth, as one circumstance tending to demonstrate an unsuitability
     for parole, a previous record of violence.  "The prisoner on previous occasions inflicted or attempted to inflict
28   serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age."  §
     2402(c)(2).

1    In his petition, Petitioner makes the blanket claim that the denial of his parole was the

2  result of a predetermined parole policy.  (Petition, at 5.)  Beyond this statement, Petitioner does

3  not expand on his claim.  However, in his traverse, Petitioner attempts to expand on his claim

4  contending that there is a policy in place mandating that the Board never grant a parole release

5  date at the prisoner's initial parole consideration hearing.  However, because this claim was not

6  fairly presented in his petition, it is not subject to review.  See Cacoperdo v. Demosthenes, 37

7  F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds

8  for relief").  In any event, even if the claim is reviewed it lacks merit.

9    In his supplement to the petition (Court Doc. 15), Petitioner submits that over the past

10  five years only seven prisoners have been granted a parole release date at their *initial* parole

11  hearing, and only two of those grants were upheld on review.  This evidence is insufficient to

12  demonstrate that there currently exists a blanket policy rendered by the governor that mandates a

13  denial of parole at the initial hearing.  To the contrary, the fact that seven individuals were given

14  a parole date at their initial hearing defeats Petitioner's claim that the Board is mandated to deny

15  parole at *all* initial hearings.

16    Petitioner's reliance on the case of Coleman v. Board of Prison Terms, 2005 WL

17  4622902 (E.D. Cal.), is inapposite.  There, the district court was presented with evidence in the

18  form of testimony by former BPT Commissioners, statements by Governor Davis that he would

19  deny parole to all murders, and statistics that only one prisoner out of 4,800 was released on

20  parole.  Based on that evidence, the district court concluded that the petitioner presented a

21  convincing case that under Governors Wilson and Davis there existed a sub rosa policy that all

22  murders would be found unsuitable for parole, and the court ordered a new parole suitability

23  hearing.  No such evidence exists here.  By the time of Petitioner's 2004 parole hearing,

24  Governor Schwarzenegger was in office and there is simply no evidence that he has implemented

25  a "no parole policy to all murders."  The statistical evidence submitted by Petitioner is simply not

26  sufficient to support a finding that there is a blanket policy to deny parole to all murders.

27  Moreover, in the instant case, as discussed *supra*, there is "some evidence" to support the BPH's

28  finding that Petitioner is unsuitable for parole.

1       In light of the above, the state court resolution of Petitioner's claims did not "result in a

2 decision that was contrary to, or involve an unreasonable application of, clearly established

3 Federal law, as determined by the Supreme Court of the United States" or "result in a decision

4 that was based on an unreasonable determination of the facts in light of the evidence presented in

5 the State Court proceeding." 28 U.S.C. § 2254(d).

6 RECOMMENDATION

7       Based on the foregoing, it is HEREBY RECOMMENDED that:

8     1.      The instant petition for writ of habeas corpus be DENIED; and,

9     2.      The Clerk of Court be directed to enter judgment in favor of Respondent.

10       This Findings and Recommendation is submitted to the assigned United States District

11 Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of

12 the Local Rules of Practice for the United States District Court, Eastern District of California.

13 Within thirty (30) days after being served with a copy, any party may file written objections with

14 the court and serve a copy on all parties.  Such a document should be captioned "Objections to

15 Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served

16 and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the

17 objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

18 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time

19 may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

20 Cir. 1991).

21 IT IS SO ORDERED.

22 **Dated:   February 6, 2008**            **/s/ Sandra M. Snyder**

23                               UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28